NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PATRICK ROBERTS, DOC# 64041,          )
                                      )
            Appellant,                )
                                      )
v.                                    )          Case No. 2D17-3015
                                      )
STATE OF FLORIDA,                     )
                                      )
            Appellee.                 )
_____)

Opinion filed August 3, 2018.

Appeal pursuant to Fla. R. App. P.
9.141(b)(2) from the Circuit Court for
Pinellas County; Nancy Moate Ley, Judge.

Patrick Roberts, pro se.


SALARIO, Judge.

        Patrick Roberts appeals from a final order summarily denying his motion

for postconviction relief under Florida Rule of Criminal Procedure 3.850. Because two

of his claims alleging ineffective assistance of counsel are facially sufficient and not

refuted by the record, we reverse and remand for further proceedings. We affirm the

denial of his remaining claims without comment.

Mr. Roberts was charged with capital sexual battery, lewd or lascivious molestation, and unlawful sexual activity with a minor. The underlying facts, though disturbing and sad, are largely irrelevant to the issues we address. It was a case that involved the sexual abuse of a minor boy that was tried to a jury. The State's principal evidence at trial was the testimony of the victim and the testimony of a Williams[1] rule witness—a man who said that he too suffered sexual abuse at the hands of Mr. Roberts when he was a minor. Mr. Roberts' abuse of the victim came to light after the Williams rule witness accused Mr. Roberts of sexual abuse. During its investigation of the witness's allegations, law enforcement contacted the victim, who then accused Mr. Roberts of sexually abusing him for several years when he was a child.

The State filed charges against Mr. Roberts based solely on his sexual abuse of the victim. Because the acts involving the victim happened many years prior to trial and there was no physical evidence of abuse, the State's case hinged on the testimony of the victim and the witness. The testimony of the Williams rule witness turned out to be especially important to the State's case because the victim suffered from mental disabilities that presented difficulties with his testimony.[2] Mr. Roberts'

---

[1]Williams v. State, 110 So. 2d 654, 663 (Fla. 1959). The Williams rule permits a trial court to admit evidence of similar crimes or wrongs in certain circumstances. See also § 90.404(2), Fla. Stat. (2009) (containing both a provision for admissibility of such evidence generally and a specific admissibility provision in cases involving child molestation).

[2]Mr. Roberts' motion for postconviction relief describes the victim as having learning disabilities and developmental delays and as being "educable mentally handicapped" and alleges that the victim's mother testified that although he was twenty-three years old at the time of trial, his mental abilities were of someone much younger. The actual facts are not clear to us from our limited record in this summary postconviction appeal. See Fla. R. App. P. 9.141(b)(2)(A) (describing contents of the

defense relied in large part on the use of impeachment techniques during his cross-examination of both the victim and the witness during the trial.

The jury acquitted Mr. Roberts of capital sexual battery but found him guilty of lewd or lascivious molestation and unlawful sexual activity with a minor. He was sentenced to fifteen years' imprisonment, followed by fifteen years' probation. Mr. Roberts appealed to this court, which affirmed his convictions and sentences. See Roberts v. State, 78 So. 3d 545 (Fla. 2d DCA 2012) (table decision). He then filed the motion for postconviction relief that is at issue here, in which he raised seven claims of ineffective assistance of counsel. The postconviction court rendered an order summarily denying all of Mr. Roberts' claims. He timely appeals that order.

We review the summary denial of a motion for postconviction relief de novo. Martin v. State, 205 So. 3d 811, 812 (Fla. 2d DCA 2016). Our task is "to determine whether the claims are legally sufficient and whether they are conclusively refuted by the record." Watson v. State, 34 So. 3d 806, 808 (Fla. 2d DCA 2010) (quoting Griggs v. State, 995 So. 2d 994, 995 (Fla. 1st DCA 2008)). "When a postconviction court summarily denies a defendant's motion without an evidentiary hearing, an appellate court 'must accept a defendant's factual allegations as true to the extent they are not refuted by the record.' " Balmori v. State, 985 So. 2d 646, 649 (Fla. 2d DCA 2008) (quoting Floyd v. State, 808 So. 2d 175, 182 (Fla. 2002)). To plead a claim for ineffective assistance of counsel, the defendant must sufficiently allege (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

record in an appeal from an order resolving a postconviction motion without an evidentiary hearing).

In claim four of his motion, Mr. Roberts alleged that his trial counsel was ineffective for interfering with his right to testify. He asserted that although he wanted to testify, his counsel "did not give [him] the option . . . and simply insisted that [he] would not testify" and, further, that his counsel did not prepare him in the event he did end up testifying. He alleged that he had no prior convictions and, as a result, that he could not have been impeached on that basis and pointed out that in contrast, the Williams rule witness did have a criminal history—rendering him subject to impeachment on that basis. He alleged that he was prejudiced because his defense was total innocence and the jury never heard him deny the charges, which was especially problematic because, in Mr. Roberts' view, his lack of criminal convictions made him more credible than the Williams rule witness. In summarily denying this claim, the postconviction court reasoned (1) that the record refuted the claim that counsel's performance was deficient because it showed that Mr. Roberts voluntarily agreed not to testify and (2) that Mr. Roberts' claim of prejudice was merely "speculative."

We turn first to the postconviction court's conclusion that the record conclusively refutes Mr. Roberts' claim on the deficient performance prong of the Strickland test. When a defendant asserts that his counsel was ineffective for interfering with his right to testify, there are two separate questions for the postconviction court to consider. The first is whether the defendant voluntarily agreed with counsel not to testify in his own defense. See Hayes v. State, 79 So. 3d 230, 231 (Fla. 2d DCA 2012) (quoting Simon v. State, 47 So. 3d 883, 885 (Fla. 3d DCA 2010)). If the answer to that question is yes, then the postconviction court must also consider whether counsel's advice to the defendant was deficient "because no reasonable

- 4 -

attorney would have discouraged" the defendant from testifying. Lott v. State, 931 So. 2d 807, 819 (Fla. 2006); see also Hayes, 79 So. 3d at 231 (quoting Simon, 47 So. 3d at 885). This latter inquiry requires the postconviction court to consider whether there are "reasonable, strategic considerations" that influenced counsel's advice that the defendant refrain from taking the stand. See Lott, 931 So. 2d at 819-20.

Here, the postconviction court addressed the first question and concluded that Mr. Roberts voluntarily agreed with counsel not to take the stand. That conclusion is not impeachable. The postconviction court attached to its order excerpts of the trial transcript containing a colloquy between Mr. Roberts and the trial court concerning whether Mr. Roberts would testify. Mr. Roberts stated under oath that he knew that the decision whether to testify belonged to him and not to his counsel, that he had discussed whether he wanted to testify with his counsel, that he did not need any more time to discuss the issue, that he did not want to testify, that the decision not to testify was his and was voluntary, and that no one forced him to make the decision. That colloquy is sufficient to conclusively refute Mr. Roberts' allegation that his decision not to take the stand was something other than a voluntary choice. See, e.g., Gonzalez v. State, 990 So. 2d 1017, 1031-32 (Fla. 2008) (holding that a substantially similar colloquy established, for purposes of review of a summary denial of a postconviction motion, that a defendant's decision not to testify was voluntary); see also Simon, 47 So. 3d at 885 (finding a similar colloquy sufficient to establish voluntariness of the defendant's decision not to testify).

The postconviction court failed, however, to ask or answer the second question of whether a reasonable attorney would have discouraged Mr. Roberts from

testifying. That matters here. Based on the allegations in his motion and the excerpts of the record attached to the postconviction court's order, Mr. Roberts' testimony may well have materially aided his defense. Although he was able to pursue his theory of innocence by impeaching the victim and the Williams rule witness and by introducing extrinsic evidence of an alibi, which was that he could not have committed the crimes with which he was charged because of his work schedule and the presence of other people in the same location at the time the abuse occurred, Mr. Roberts alleges that he could and would have directly denied the statements made by the witnesses and offered his own account of things. If credited by a jury in the way Mr. Roberts has alleged his testimony would have been credited—and, we stress, as far as our limited postconviction record is concerned—that testimony could have made a difference. It may well be that a reasonable lawyer otherwise might have advised Mr. Roberts not to testify for any number of reasons, e.g., his story was not believable, he was likely to fold on cross-examination, his demeanor was callous toward the victim and Williams rule witness. Such tactical explanations, if determined to be reasonable, would not constitute deficient performance. See Jackson v. State, 975 So. 2d 485, 486 (Fla. 2d DCA 2007) ("Although strategic decisions generally do not constitute ineffective assistance of counsel, an evidentiary hearing may be necessary to determine whether counsel's decisions were the product of strategy or ineptitude."). But Mr. Roberts' allegations regarding counsel's advice not to testify were a facially sufficient assertion of deficient performance, and nothing in the attachments to the postconviction court's order demonstrates otherwise. See, e.g., Simon, 47 So. 3d 886 (reversing summary denial of an ineffective assistance claim where counsel offered deficient advice to the

- 6 -

defendant that his testimony was not needed to achieve an acquittal despite the fact that his testimony would have set forth an alibi and been the only evidence contradicting the testifying police officer and stating that a finding that counsel's tactical decision in so advising the defendant is not ineffective assistance "usually is inappropriate without an evidentiary hearing"); Mims v. State, 656 So. 2d 577, 577-78 (Fla. 1st DCA 1995) (reversing summary denial of a claim that counsel was ineffective for advising the defendant not to testify where "his alibi testimony would have corroborated the testimony of the sole defense eyewitness"); see also Prieto v. State, 708 So. 2d 647, 648-49 (Fla. 2d DCA 1998) (affirming the denial of a similar claim after an evidentiary hearing at which the postconviction court was able to weigh the credibility of the claim in regard to the alleged deficient performance).

The same is true for the prejudice requirement of the Strickland test and for the same reasons. The facially sufficient allegations of the motion depict a case that hinged on the jury believing the victim and the Williams rule witness, whose testimony could have been undermined with credible testimony from Mr. Roberts. This demonstrates a nonspeculative possibility—depending on the real facts—that Mr. Roberts was prejudiced by deciding not to testify, and the record attachments to the trial court's order do not show otherwise. See, e.g., Hill v. State, 226 So. 3d 1085, 1086 (Fla. 1st DCA 2017) (reversing the summary denial of an ineffective assistance claim and finding prejudice to be sufficiently alleged where the defendant claimed counsel offered deficient advice about his decision to testify because he could have "provided an innocent explanation for the presence of his DNA on the firearm used in the offenses" and "absent his testimony, there was no chance for his defense to succeed");

Loudermilk v. State, 106 So. 3d 959, 960-61 (Fla. 4th DCA 2013) (reversing, in a case involving sexual abuse of a minor where trial counsel told the defendant not to testify, the summary denial of an ineffective assistance claim because the testimony the defendant alleged he would have given "had the potential to undermine the weight given by his jury to the victim's inculpatory testimony"); see also Visger v. State, 953 So. 2d 741, 744 (Fla. 4th DCA 2007) (finding that the defendant was prejudiced by counsel's deficient advice not to testify where his testimony would have provided credible evidence of an invitation into the dwelling sufficient to negate the burglary charge). The trial court therefore erred in summarily denying claim four of Mr. Roberts' motion.

In claim six, Mr. Roberts asserted that defense counsel was ineffective for failing to investigate and present evidence that the Williams rule witness had a motive to fabricate the allegations against him. He alleged that he told defense counsel that the witness reported the sexual abuse only after the witness asked him for $20,000 to open a restaurant and he refused and that the witness's wife told his wife that the witness had spent all of the family's savings. He argued that counsel's failure to investigate and present this evidence deprived him of the right to establish the witness's motive to lie. Cf. McDuffie v. State, 341 So. 2d 840, 841 (Fla. 2d DCA 1977) (explaining that the right to present such evidence is "an important right to a defendant in a criminal case where the jury must know of any improper motives of a prosecuting witness"). The postconviction court found the claim speculative, pointing out (1) that the witness denied asking Mr. Roberts for money in a deposition and that the only way the conversation could have been proved was through Mr. Roberts, who did not testify, and (2) that the

related statements by Mr. Roberts' wife about what the witness's wife said were hearsay.

In light of our reversal of the denial of claim four, we respectfully disagree. While the witness's deposition does show that he denied asking Mr. Roberts for money, the postconviction court's rationale that the defense would not have been able to contradict this testimony because Mr. Roberts never testified does not dispose of the issue. Mr. Roberts alleged in his sworn motion that his testimony would have refuted the witness's account in this regard and that counsel unreasonably advised him to not testify. As noted above, the record does not refute Mr. Roberts' facially sufficient claim that counsel was ineffective by interfering with his right to testify.[3] Mr. Roberts alleged that, had he testified, he would have been able to provide this evidence of a reason to lie. Similarly, although the postconviction court correctly observed that Mr. Roberts' wife's statements were hearsay and could not have been admitted on their own, that does not explain counsel's alleged failure to investigate the facts, which—as far as the motion and excerpts of the record attached to the trial court's order are concerned— may have led to the discovery of admissible evidence on this point. In a case that hinged on the credibility of Mr. Roberts' accusers, evidence that the State's key witness

_____

[3]We recognize that claims four and six are separate claims but note that both turn on whether defense counsel's strategy not to call Mr. Roberts to testify was reasonable or constituted deficient performance. In other words, should the postconviction court determine on remand that counsel's advice to Mr. Roberts to not testify was deficient performance, that would necessarily force the postconviction court to reconsider claim six because "in determining whether this trial strategy was reasonable, the postconviction court needed to explore whether counsel failed to reasonably investigate the case in order to develop" the defense Mr. Roberts claims was not investigated. See, e.g., Sage v. State, 905 So. 2d 1039, 1041 (Fla. 2d DCA 2005). Moreover, the postconviction court's reasons for summarily denying claim six presume that Mr. Roberts' decision to not testify was voluntary and not the byproduct of the alleged ineffective assistance at issue in claim four.

had a motive to fabricate allegations against Mr. Roberts could have been crucial to the defense. See Kelly v. State, 198 So. 3d 1077, 1078 (Fla. 5th DCA 2016) ("Failure to impeach a key witness may amount to ineffective assistance of counsel, warranting relief. This is especially true in cases involving credibility contests, as the relative credibility of the witnesses becomes central to the trial." (citing Tyler v. State, 793 So. 2d 137, 144 (Fla. 2d DCA 2001))); cf., e.g., Pierce, 137 So. 3d at 582 (reversing summary denial of claim that counsel was ineffective for failing to impeach the State's key witness with prior inconsistent statements and remanding for evidentiary hearing). The postconviction court's summary denial of claim six was therefore in error.

On remand, the postconviction court should first examine the trial record and determine whether its contents conclusively refute claims four and six. "If so, the court may again deny the motion attaching whatever documentation it relies upon. If not, an evidentiary hearing is necessary to determine whether counsel's performance was deficient and, if so, whether but for the deficient performance the outcome of the trial would have been different." Richardson v. State, 617 So. 2d 801, 803 (Fla. 2d DCA 1993).

Affirmed in part, reversed in part, and remanded.

NORTHCUTT and KHOUZAM, JJ., Concur.